Kevin Ryan Behrendt CASBN#211879
Dermer Behrendt
13101 Washington Boulevard, Suite 407
Los Angeles, CA 90066
Phone:       (310) 614-2492
Facsimile:   (310) 954-9206
E-mail:      kevin@dermerbehrendt.com

Attorney for Plaintiff
SOLO INDUSTRIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLO INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HERBONITE, INC., <br><br> Defendant, | Case No. 2:24-cv-06595-MWF-MAR <br><br> **DECLARATION OF JARED ROVIRA IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT AGAINST HERBONITE, INC.** <br><br> **Hon. Michael W. Fitzgerald** <br> **United States District Judge** |

I, Jared K. Rovira, declare:

1.  I am counsel for Plaintiff, Solo Industries, Inc and make this declaration in support of Plaintiff Solo Industries, Inc.'s Motion For Default Judgment Against Herbonite, Inc., doing business as WickiePipes, (hereafter, "WickiePipes" or "Defendant"). Unless otherwise stated, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2. The "Wikilite" product sold by WickiePipes as an all-in-one smoking device (the "Accused Product) infringes at least claim 1 the Solo Industries' 8,881,738 patent (the "Asserted Patent"). An image of the Accused Product is attached as **Exhibit R-1**. A claim chart illustrating the infringement of at least claim 1 of the Asserted Patent by the Accused Product is attached as **Exhibit R-2**.

3. After service of summons was made on Misak Mkhdesyan, on August 20, 2024, Solo Industries has proffered several good faith settlement offers that have included progressively more favorable terms for WickiePipes.

4. WickiePipes has rejected every reasonable offer proposed by Solo Industries and has threatened to file for bankruptcy if Solo Industries obtains a judgement for monetary damages.

5. No settlement agreement has been reached.

6. Throughout settlement discussions and during the pendency of this suit, Solo Industries, through counsel, has made WickiePipes aware of the progression of this litigation.

7. Solo Industries, through its counsel, has provided Defendant a copy of the Order to Show Cause, has notified Defendant of its intention to request Entry of Default and provided a copy the Request for Entry of Default and has provided a copy of the Default entered by this Court.

8. Solo Industries undertook the expense to draft and file the stipulation to an extension of time for WickiePipes to Answer the Complaint reflected in Docket Record No. 11.

9. On December 2nd, 2024, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered default against Defendant Herbonite, Inc. See Docket No. 15.

10. Default was entered by the Clerk based on Solo Industries' Complaint filed August 5th, 2024. [Doc. 1].

11. Defendant Herbonite, Inc. is a business entity and is therefore not a minor or an incompetent person.

12. Defendant Herbonite, Inc. is a business entity and is not currently in the military service, and therefore the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply.

13. As set forth on the Proof of Service appended to the Motion, Plaintiff served the Motion for Default Judgement, together with the papers filed in support thereof, on Defendant Herbonite, by providing the moving papers to its registered agent, Mr. Misak Mkhdesyan, via email.

14. A screenshot of the Accused Product for sale on WickiePipes' website <wickiepipes.com> is attached as **Exhibit R-3**.

15. The amount of prejudgment interest is calculated using the following maounts: the principal amount is $90,420.00, the interest rate is 7.0% per annum and

the time is 6 years and 5 months from the August 1st, 2018 initial date of infringement. The formula for interest, compounding quarterly is $A = P(1 + r/n)^{nt}$, wherein "A" is the total amount of principal plus interest, "P" is the principal amount, "r" is the annual rate of interest, "n" is the number of times the interest compounds per year, and "t" is the time in years. Therefore, $A = \$90420(1+0.07/4)^{(4)(6.41)} = \$141,074.00$. Further, $A = P + I$, therefore $\$141,074.00 = \$90,420.00$, such that $I = \$50,654.00$. The total amount of prejudgment interest owed is $50,654.00.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of February, 2025.

/s/ Jared K. Rovira
Jared K. Rovira
Intellectual Property Consulting
400 Poydras Street, Suite 1400
New Orleans, LA 70130
T:(504) 322-7166/F:(504) 322-7184
E-mail: jrovira@iplawconsulting.com

*ATTORNEY FOR SOLO INDUSTRIES, INC.*

# EXHIBIT R-1



# EXHIBIT R-2

**Claim Chart: U.S. Pat. No. 8,881,738 – Wikilite Product Comparison**

| U.S. Patent No. 8,881,738 | Wikilite Product ("Accused Product") |
|---|---|
| **Claim 1.** An integrated Smoking device comprising: | The preamble of Claim 1 refers to the invention as "Integrated Smoking Device" due to its incorporation of a lighter and pipe in a single device [See Column 1, Line 65 - Column 2, Line 15]. Similarly, when Herbonite, Inc. (d/b/a WickiePipes) offered the Accused device for sale, it marketed the device as an "All-in-one" device [See the screenshot taken from Wickiepipes.com website below].  |

11

**Claim Chart: U.S. Pat. No. 8,881,738 – Wikilite Product Comparison**

| | |
|---|---|
| **Claim 1.** An integrated Smoking device comprising:<br>**a housing (*element 1*):**<br>**a bowl (*element 2*) disposed in the housing:**<br>    a smoke tube (element 3) coupled to the bowl at a bowl end allowing gaseous flow from the bowl end to a draw end (element 4); | |
| **Element 1**: The '738 patent defines the housing" as the metal piece within which the bowl is formed by a depression. <br><br><br><br>**Element 2:** tThe bowl is a depression formed in the housing.<br><br>[1]Smoke Tube (element 3) of the Accused Product extends from the base of the bowl (element 3) to the draw end of the device (element 4) along the solid line. See also below. | |

**Claim 1.** An integrated Smoking device comprising:
  a housing (*element 1*):
  a bowl (*element 2*) disposed in the housing:

  **a smoke tube (*element 3*) coupled to the bowl at a bowl end allowing gaseous flow from the bowl end to a draw end (*element 4*);**

**Element 4**: The "draw end" device allows contains a an aperture in communication with "smoke tube" that allows users to inhale smoke produced by combustion on material in the bowl of the device.



**Element 3**: The aperture in the base of the bowl is the beginning of the "smoke tube" that is coupled to the bowl to allow smoke to pass from the bowl to the draw end.

**Element 3**: The portion of the "smoke tube" that is in communication with the aperture of base of the bowl in the housing. The pictured component is typically attached to the device



3

| | |
|---|---|
| **Claim 1.** An integrated Smoking device comprising:<br>a housing (element 1):<br>a bowl (element 2) disposed in the housing:<br>a smoke tube (element 3) coupled to the bowl at a bowl end allowing gaseous flow from the bowl end to a draw end (element 4);<br>**a flame assembly (*element 5*) associated with a fuel aperture (*element 6*) for directing fuel for a flame near the bowl and approximately parallel to the bowl;**<br>**an igniter (*element 7*) arranged near the fuel aperture (*element 6*) so that when the fuel aperture is directing fuel, the igniter ignites the fuel; and** | **Element 5**: In accordance with the specification, the flame assembly is the combination of the fuel aperture (element 6), igniter (element 7), spark gap (the space between the igniter and the fuel aperture) and flame aperture. See Column 5, Lines 1-9.<br><br>**Element 6:** As is evident from the arrangement of bowl in proximity to the flame assembly and the orientation of the fuel aperture, when a flame is created, it is near and parallel to the bowl<br><br>**Element 7:** Activating the user control (element 12, shown below) of the Accused Device causes igniter (element 7) to produce a spark that ignites the fuel from the fuel aperture (element 6) and produce a flame that is parallel to the bowl. |
|  | |

4

...a moveable arm (*element 8*), said moveable arm externally and proximately mounted near the bowl, the moveable arm further comprising the flame assembly (*element 5*) and an air intake aperture (*element 9*)[4]; wherein said moveable arm has an active position (element 10) and an inactive position (element 11), wherein said moveable arm is thrust above the housing (element 1) in the active position and is lowered towards the housing in the inactive position[5]; and

**Element 8**: the movable arm is the portion of the device that extends above the housing and bowl in the active position (element 10) and is lowered back towards the housing and bowl in the inactive position (element 11).

**Element 9**: the aperture of the flame assembly allows air intake for the flame to be produced.



**Element 11**: The movable arm in an inactive position is pictured above.



**Element 10**: The movable arm in an active position is pictured above

5

| |
|---|
| wherein said flame assembly (element 5) further comprises said fuel aperture (element 6) and said igniter (element 7)[1]; <br><br> a user control (element 12) arranged such that a user may activate the igniter and cause fuel to flow from the fuel aperture, so as to produce a flame directed at the bowl, in a single operation[2]. |
| **Element 12**: The user control of the Accused Device is a button that causes the flame assembly to produce a flame when pressed.  |

[1] Shown on page 2
[2] A test of a purchased Accused Device confirmed that it possesses this functionality.

6

# EXHIBIT R-3

